IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Summer Wood Property Owners            )
Association, Inc.,                     )
                                       )
            Plaintiff,                 )
                                       )        Civil Action No. 2:19-cv-3548-BHH
v.                                     )
                                       )        **ORDER**
Pennsylvania National Mutual Casualty  )
Insurance Company,                     )
                                       )
            Defendant.                 )
_____ )

This matter is before the Court upon Defendant Pennsylvania National Mutual Casualty Insurance Company's ("Penn National") motion pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Western District of North Carolina. For the reasons set forth herein, the Court grants Penn National's motion.

**BACKGROUND**

This action arises out of an underlying construction defect lawsuit filed in 2015, where Summer Wood Property Owners Association, Inc. ("Summer Wood") asserted claims against various contractors, including two entities insured by Penn National, Jose Castillo d/b/a JJA Framing and JJA Construction, Inc. ("JJA"). In the underlying construction defect lawsuit, Summer Wood was awarded a default judgment against JJA on June 6, 2019, and in the instant action, Summer Wood seeks, as a judgment creditor of JJA, to collect from Penn National on the default judgment against JJA. Importantly, however, Penn National previously initiated litigation to determine its coverage obligations to JJA with respect to the underlying construction defect lawsuit by filing a declaratory judgment suit against JJA in the United States District Court for the Western District of

North Carolina. (See ECF No. 4-2, Civil Action No. 3:18-cv-266-GCM.) In that declaratory judgment action, Judge Graham C. Mullen entered an order dated May 22, 2019, awarding Penn National a default judgment against JJA, finding that "(a) the Penn National policies do not afford coverage for the claims against the JJA Defendants in the Underlying Construction Defect Litigation, (b) Plaintiff Penn National is not required to defend the JJA Defendants in the Underlying Construction Defect Litigation, and (c) Plaintiff Penn National is not obligated in any way to pay any damages that may be awarded against the JJA Defendants in the Underlying Construction Defect Litigation." (ECF No. 4-3 at 11, Civil Action No. 3:18-cv-266-GCM.)

## STANDARD OF REVIEW

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). District courts within the Fourth Circuit consider four factors when deciding whether to transfer venue: (1) the weight accorded to the plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice. *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (citations omitted). Generally, in determining whether a transfer of venue is appropriate, courts give substantial weight to a plaintiff's choice of forum, and defendants must make a compelling showing that the remaining factors weigh in favor of transfer. *Id.* "This analysis involves an 'individualized, case-by-case consideration of convenience and fairness . . . .'" *Starks v.*

*Am. Airlines, Inc.*, 368 F. Supp. 3d 866, 870 (D.S.C. 2019) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  The party seeking to transfer venue bears the burden of proof. *Zotto v. Universal Physician Servs., LLC*, 214 F. Supp. 3d 499, 501 (D.S.C. 2016).

## DISCUSSION

In its motion to transfer, Penn National first asserts that this action could have been brought in the Western District of North Carolina, and Summer Wood agrees.  Next, Penn National asserts that the factors governing transfer under § 1404(a) weigh in favor of transferring this case to the Western District of North Carolina, but Summer Wood does not agree.

Here, Penn National asserts that, although Summer Wood's choice of forum is entitled to deference, the convenience of the parties and the interest of justice outweigh Plaintiff's choice of forum.  Penn National argues that this action concerns whether coverage exists under Penn National's policies for the default judgment entered against its insured, JJA, and that the primary witnesses will be Penn National claims personnel located in North Carolina, and the insured, Jose Castillo, who resides in the Western District of North Carolina.  Penn National also asserts that the interest of justice weighs in favor of transfer because the Western District of North Carolina previously considered and adjudicated the issue at the very heart of this litigation, namely, whether JJA is entitled to coverage under the Penn National policies for the claims asserted in the underlying construction defect lawsuit and whether Penn National is obligated to pay any damages that may be awarded against the JJA Defendants in the underlying lawsuit.  In other words, Penn National asserts that a transfer of venue will serve judicial economy and avoid the potential for inconsistent judgments.

3

Summer Wood opposes Penn National's motion and contends that the convenience of the parties and witnesses and the interest of justice support keeping the case in Charleston. Summer Wood asserts that it chose the Charleston venue because part of the Summer Wood project is located in Charleston County, because the underlying construction defect litigation was in Charleston County, and because the dispute is governed by South Carolina law. Summer Wood asserts that a similar case involving Penn National was tried in 2019 in state court in neighboring Berkeley County, and that the witnesses in this case will be similar to the witnesses in that case. Summer Wood further asserts that it is more convenient for it to litigate this case in Charleston, and that it would be just as easy for the Penn National witnesses to testify in Charleston. Finally, Summer Wood asserts that the interest of justice weigh in favor of keeping the case in Charleston. Specifically, Summer Wood admits that "JJA's rights under the Penn National policies have been adjudicated in the Western District of North Carolina," but asserts that "Penn National orchestrated a plan to obtain a default judgment against JJA in North Carolina with the goal of using that default judgment to block any future attempt by Summer Wood POA to obtain relief as a judgment creditor under the Penn National policies issued to JJA." (ECF No. 9 at 7.) Summer Wood objects that it was not named as a party to the lawsuit in North Carolina and was not notified of the suit.

After review, the Court is not convinced by Summer Wood's arguments and instead agrees with Penn National that a transfer of venue to the United States District Court for the Western District of North Carolina is warranted under § 1404(a). Although Plaintiff's choice of the Charleston venue is given substantial weight, the Court finds that Penn National has made a compelling showing that the remaining factors weigh in favor of

transfer. First, the Court does not agree with Summer Wood that the location of the Summer Wood project and the underlying construction defect litigation weigh strongly in favor of keeping the case in Charleston. This coverage action involves the interpretation of a set of insurance policies that Penn National issued to JJA. Summer Wood is simply standing in the shoes of JJA, and contrary to the underlying construction defect litigation, it appears that the primary witnesses for this coverage dispute action will be Penn National personnel and Jose Castillo, who lives in the Western District of North Carolina.

In addition, and most importantly, the Court finds that the interest of justice overwhelmingly favors transfer to the Western District of North Carolina, for the simple reason that Judge Mullen has already considered and adjudicated the specific issue at the heart of this action, and thus a transfer will best serve the interest of judicial economy and will avoid the potential for duplicitous litigation and inconsistent results.[1] *See*, *e.g.*, *Bennett v. Bally Mfg. Corp.*, 785 F. Supp. 559, 563 (D.S.C. 1992) (transferring action to district to "promote the just and efficient conduct of the litigation" "where a judge intimately involved with the issues present here presides, and where a substantial portion of the documentary and testimonial evidence is present"); *LG Electronics, Inc., v. Advance Creative Comp. Corp.*, 131 F. Supp. 2d 804 (E.D. Va. 2001) (transferring case as a matter of judicial economy where a party has previously litigated claims involving certain issues in one forum); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988). Accordingly, the Court grants Penn National's motion to transfer venue pursuant to § 1404(a).

---

[1] The Court notes that despite Summer Wood's arguments to the contrary, Penn National was not under any obligation to notify Summer Wood of or include Summer Wood in the prior declaratory judgment action filed in the Western District of North Carolina.

## CONCLUSION

Based on the foregoing, the Court hereby grants Penn National's motion to transfer

venue pursuant to § 1404(a) (ECF No. 4), and the Court transfers this action to the United

States District Court for the Western District of North Carolina.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
Bruce Howe Hendricks
United States District Judge

September 30, 2020
Charleston, South Carolina